**Opinion filed May 14, 2009**



# In The

# Eleventh Court of Appeals

_____

## No. 11-07-00255-CV

_____

## IN THE INTEREST OF B.R.P., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 37992-C**

## M E M O R A N D U M   O P I N I O N

This is an appeal from the trial court's order on the conservatorship of B.R.P. The trial court entered its final decree of divorce for Tracey Jean Perkins and Ronald Edward Perkins on May 14, 2007. The trial court appointed Tracey and Ronald joint managing conservators of B.R.P. and awarded Ronald the right to designate the child's primary residence. We affirm.

In her sole issue on appeal, Tracey argues that the trial court abused its discretion in appointing Ronald as a joint managing conservator. The trial court's determination of conservatorship is reviewed for abuse of discretion. *Naguib v. Naguib*, 137 S.W.3d 367, 370 (Tex. App.—Dallas 2004, pet. denied). A court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court's determination of the best interest of the child will only be reversed upon a

determination of an abuse of discretion because the trial court is in the best situation to observe the demeanor and personalities of the witnesses. *Naguib*, 137 S.W.3d at 371.

The Texas Family Code establishes a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (Vernon 2008). However, TEX. FAM. CODE ANN. § 153.004 (Vernon 2008) provides:

> (a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

> (b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child.... It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

Tracey argues that there was credible evidence of Ronald's acts of family violence within the two years preceding the filing of the suit.

Ronald and Tracey were married in October 1992. Tracey had two sons, Steven and Chris, from previous relationships. B.R.P. was born June 3, 1997. Tracey testified that Ronald can be physically and verbally abusive. She testified that, on one occasion, he knocked her son, Steven, to the ground. However, Steven was twenty years old at the time. Tracey further testified that Ronald "backhanded" Chris for not picking up his clothes. Tracey stated that Ronald jerked B.R.P. by her arm when B.R.P. would not pick up her toys. She also stated that Ronald had B.R.P. stand in the corner for punishment and that B.R.P. started crying. Ronald took off his belt and hit the filing cabinet with the belt, telling B.R.P. that he would "give [her] a reason to cry."

Chris testified that he had lived with Ronald for thirteen or fourteen years. Chris stated that Ronald had been physically aggressive with him at times and had backhanded him and cussed at him.

2

Chris said that Ronald did not use profane language with B.R.P. Chris acknowledged that Ronald did not "pick on him" without reason but disciplined him as a father.

Ronald testified and acknowledged physical discipline of the children. Ronald stated that both he and Tracey spanked the children with a wooden paddle. Ronald admitted losing his temper with Chris and slapping Chris in the face. Ronald further admitted spanking Steven with a spark plug wire and backhanding Steven.

Steven testified at trial that Tracey usually worked nights and that Ronald took care of him, his brother, and B.R.P. Steven stated that B.R.P. should live with Ronald in the Abilene area. Danielle Star had known Ronald and Tracey for twelve years. Danielle testified that Ronald was a good father to all three children. Danielle further testified that the children were well-behaved and treated Ronald with respect. Danielle stated that it would be best for B.R.P. to live with Ronald. Julie Brisco, Tracey's friend, also testified that it would be best for B.R.P. to live with Ronald.

If credible evidence is presented of a history or pattern of past or present physical abuse by one parent directed against the other parent or a child, the trial court may not appoint joint managing conservators. Section 153.004(b). Family violence is an act that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the family member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself. TEX. FAM. CODE ANN. § 71.004(1) (Vernon 2008). Family violence is also abuse by a member of a family toward a child of the family. TEX. FAM. CODE ANN. § 71.004(2) (Vernon 2008). Abuse is defined as mental or emotional injury to a child that results in observable and material impairment in the child's growth, development, or psychological functioning or physical injury that results in substantial harm to the child, excluding reasonable discipline by a parent that does not expose the child to a substantial risk of harm. TEX. FAM. CODE ANN. § 261.001(1)(A), (C) (Vernon 2008); *Stucki v. Stucki*, 222 S.W.3d 116, 123 (Tex. App.—Tyler 2006, no pet.).

Ronald acknowledged spanking Steven with a spark plug wire; however, the record does not indicate that that incident occurred within two years from the filing of the suit. Moreover, Steven did not testify that Ronald abused him or any of the children. *See Stucki*, 222 S.W.3d at 124. Ronald further acknowledged losing his temper with Chris and slapping Chris in the face. There was

testimony that Chris had a red mark on his face for two days, but Ronald does not recall leaving a mark on Chris. There was conflicting evidence on whether Chris suffered a physical injury, and the evidence does not show that the slap resulted in substantial harm to Chris. *Id.* The record shows that Tracey left Chris with Ronald when she moved to Las Vegas, Nevada, indicating that she did not fear for his safety while living with Ronald. *See Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.).

There is no evidence that Ronald abused B.R.P. or that B.R.P. suffered any physical injury resulting in substantial harm. *Stucki*, 222 S.W.3d at 124. Again, Tracey left B.R.P. in Ronald's care when she worked in Fort Worth, and she allowed B.R.P. to live with Ronald while she moved to Las Vegas. *See Hinkle*, 223 S.W.3d at 782. The record shows that Ronald used physical force in disciplining the children, but the record does not support a finding of a history or pattern of physical abuse. The record shows that Ronald hit Tracey on one occasion; however, that was prior to their marriage and does not support a finding of a history or pattern of abuse under the statute. There was no protective order rendered against Ronald during the marriage or during the pendency of the suit. *See Stucki*, 222 S.W.3d at 123. We cannot conclude from the record before us that the trial court abused its discretion in appointing Ronald as joint managing conservator with the right to establish the primary residence of B.R.P. Tracey's sole issue on appeal is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


May 14, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4